# Exhibit B

**IRREVOCABLE TRUST AGREEMENT** dated as of the       day of              , 2003, between **STEVEN MENZIES**, as Settlor, and **CHRISTIANA BANK AND TRUST COMPANY**, as Trustee.

As and for a gift, the Settlor hereby transfers and assigns to the Trustee and its successors (hereinafter the "Trustees") the property set forth in Schedule A annexed hereto. The Trustees shall hold said property, together with any other property received by them, in trust (to be known as the Menzies GRRT), upon the following terms and conditions:

1. The Trustees shall invest and reinvest the principal of said trust and shall pay to the STEVEN MENZIES DISCRETIONARY TRUST DATED _____ (hereinafter referred to the "Annuitant") annually on the day immediately prior to the anniversary date of this Agreement an amount (the "unitrust amount") equal to **ONE PERCENT** (1%) of the net fair market value of the trust assets valued as of the day immediately prior to the anniversary date of this Agreement until two years from the date hereof (the "termination date"), whereupon the trust shall terminate and the then principal thereof shall be distributed to the Settlor, if he is then living, or, if he is then dead, to the Executors or Administrators of the Settlor's estate to be disposed of as part thereof.

It is intended that the trust under this Article shall create a "qualified unitrust interest" pursuant to the provisions of the regulations to section 2702 of the Code.

2. The following provisions shall apply to the trust created under Article 1 of this Agreement:

(a) The unitrust amount shall be paid to the Annuitant, annually on the day immediately prior to the anniversary date of this Agreement from income and, to the extent that income is not sufficient, from principal; provided, however, that payment of the unitrust amount may be made after any such anniversary date, so long as the payment is made no later than one hundred and five days after the anniversary date. Any income of the trust for a taxable year in excess of the unitrust amount shall be added to the principal. In determining the unitrust amount, the Trustees shall prorate the same on a daily basis for a short taxable year.

(b) If for any year the net fair market value of the trust assets is incorrectly determined by the Trustees, then within a reasonable time after the final determination of the correct value for Federal tax purposes, the Trustees shall pay from the trust assets to the Annuitant, in the case of an undervaluation, or shall receive from the Annuitant, in the case of overvaluation, an amount equal to the difference between the unitrust amount properly payable and the unitrust amount actually paid, with interest if then required by applicable law or regulations.

(c) No additional contributions may be made to the trust after the initial contribution.

1

(d) Except as otherwise provided in Article 1 of this Agreement, during the term of the trust under said Article 1, no distribution of income or principal shall be made to or for the benefit of any person or entity other than the Annuitant.

(e) The commutation of the interest of the term holder is prohibited.

(f) The Trustees are prohibited from issuing a note, other debt instrument, option or other similar financial arrangement in satisfaction of the unitrust amount and the unitrust amount shall be paid in cash or cash equivalents.

3. If CHRISTIANA BANK AND TRUST COMPANY ceases to be qualified as a Trustee hereunder, Northern Trust Company shall qualify in its place. Subject to the foregoing, the Trustees from time to time qualified hereunder are authorized and empowered to designate one or more co-Trustees and a sole surviving Trustee at any time qualified hereunder is authorized and empowered to designate one or more successor Trustees to succeed himself, herself or itself.

CHRISTIANA BANK AND TRUST COMPANY (or its successor) shall receive compensation for its services as sole or co-Trustee in accordance with its schedule of rates, including minimum fees and separate compensation for real estate, interests in closely-held businesses, and other special investments, as published from time to time and in effect at the time services are rendered.

No Bond or other security shall be required for any reason whatsoever of any Trustee named herein or designated as herein provided.

4. The Trustees hereunder shall have the following discretionary powers in addition to those conferred by law:

(a) To make any payment or distribution (required or authorized under this Agreement) either wholly or partly in kind at market value at date of distribution; to cause any share to be composed of cash, property or undivided fractional interests in property different in kind from any other share.

(b) To continue to hold any property, real, personal, or otherwise, including, but not limited to, stocks, bonds or other securities, domestic or foreign, in the form in which it shall be when received by them hereunder (without regard to any rule of law that may require them to decide whether or not to retain such property) or as the form thereof may be changed pursuant to the provisions of the other subdivisions of this Article, so long as they, in their absolute discretion, deem it advisable.

(c) To invest and reinvest the principal and accumulated income in any property, including, but not limited to, stocks, bonds or other securities or so called derivative investments, domestic or foreign, options to sell or to purchase such securities or so-called derivative investments (whether or not then held hereunder), structured notes, shares or interests in mutual funds, investment companies, investment trusts or common trust funds of a bank or trust company, currencies, precious metals, oil and gas properties or

other natural resources and commodities, or interests in, rights to or options to sell or to purchase any of the foregoing (whether or not then held hereunder), improved or unimproved real property or tangible personal property or life insurance, endowment, annuity or similar contracts that they may, in their absolute discretion, deem advisable, without regard to any duty to diversify or to make such property productive of income, and in any manner, including by direct purchase, entry in to a joint venture, creation of or purchase of an interest in any form of partnership or corporation or through any other form of participation or ownership.

(d) To employ any person, firm, corporation, bank or trust company for advice with respect to investment policy, but the Trustees may, in their absolute discretion, follow or refrain from following any recommendation so obtained, and said recommendations shall not in any way limit the discretionary power and authority herein conferred upon them with respect to investments; to designate a corporation, partnership or other firm, authorized so to act, as custodian; to employ attorneys, accountants and bookkeepers; and to charge the fees and expenses of the foregoing to the trust herein.

(e) To exercise or perform every power, authority or duty, including discretionary powers, by the concurrence and in the names of a majority of the Trustees qualified to participate, with the same effect as if all had joined therein; but by unanimous vote of the Trustees they may determine the number (one or more) who may give instructions to custodians, sign checks or withdrawal orders or have access to safe deposit boxes.

(f) Severally to resign, by delivering to any successor or co-Trustee written notice of such resignation, to take effect at such date as said resigning Trustee may specify in said notice, without necessity for prior accounting or judicial approval.

(g) Severally to authorize, by instrument in writing, any person or corporation, including any co-Trustee, bank or trust company, to act in the place of said Trustee with respect to specified transactions, to sign a particular check or checks, or to execute any other specifically stated instruments in the name of said Trustee.

(h) To credit to principal or income or to apportion between them in such manner as they deem advisable any distributions from partnerships, any extraordinary, wasting or liquidating dividends, any dividends payable in the stock of the corporation paying the dividend or payable in the stock of another corporation and any so-called "capital gains dividends" declared by investment companies or investment trusts.

(i) To charge to principal or income or to apportion between them any ordinary or extraordinary expenses in such manner as they deem advisable.

(j) To determine if and to what extent they shall amortize any premium paid by them on bonds or other obligations for the payment of money.

(k) To alter, repair, improve, demolish, manage, partition, mortgage, lease for any period (including a period in excess of any fixed by statute and extending beyond the duration of the trust herein), exchange, grant options to lease or to buy and sell or

dispose of, at public or private sale and upon such conditions and such terms as to cash and credit as they deem advisable, any property held hereunder.

(l) To enter into, subordinate, extend, renew, modify or release, in whole or in part, any mortgage or other security arrangements held by them or held against any property hereunder.

(m) To borrow such sums as they deem advisable for the proper administration of the trust hereunder and to give security therefor.

(n) To remove any of the property held hereunder to or from any jurisdiction; to change the situs of administration of the trust hereunder from one jurisdiction to another and to elect the law of such jurisdiction to govern the same.

(o) To organize or participate in the organization of business entities of any form, including, but not limited to, corporations, partnerships, limited liability companies and limited liability partnerships, and to transfer to them any part or all of the property held by them hereunder in exchange for securities thereof or interests therein.

(p) To set apart out of the income of the trust herein (or out of the income of corporations or partnerships in which the trust may be interested) reserves for such purposes including, without limitation, depreciation, depletion, obsolescence and other contingencies, and in such amounts as they deem advisable.

(q) To trade on margin and, for such purpose, to maintain and operate a margin account with any broker and to pledge any property held hereunder with such broker for loans and advances made to them. In connection with the foregoing, the Trustees are authorized and empowered to hold title in and to property in bearer, nominee or other form, without disclosure of any trust, so that title may pass by delivery.

(r) To participate in and consent to any corporate reorganization, dissolution, liquidation, merger, consolidation, sale or lease, or in and to any other change in any corporation or in its financial structure, and to become a depositor with any protective, reorganization or similar committee, and to make all necessary payments incident to the foregoing; to exercise or to sell any conversion, subscription or similar rights; and in general to exercise in respect to any securities the unrestricted rights of a personal owner, including voting in person or by proxies, general or otherwise.

(s) To the extent permitted by law, to register any of the property held hereunder in their names as Trustees or in the names of nominees, or to take and keep the same unregistered, in bearer form or otherwise in such condition as to pass by delivery.

5. (a) All the powers granted in this Agreement may be exercised after the termination of the trust hereunder in connection with the proper administration and distribution thereof.

(b) This Agreement shall be governed by and its validity, effect and interpretation determined by the laws of the State of Delaware and it is the intention of the

parties hereto that the trust created hereunder constitute a statutory trust under Chapter 38 of Title 12 of the Delaware Code, 12 Del. C. Section 3801 et seq. (the "Act") and that the Trust be governed by the provisions of the Act, except as modified herein. Notwithstanding the foregoing, the Trustees may, from time to time, declare in writing that this Agreement shall be governed, and its validity, effect and interpretation shall be determined, thereafter by the laws of any other jurisdiction within the United States of America or that the forum for administration of the trust hereunder shall thereafter be the courts of any other jurisdiction within the United States of America, but only until any further declaration of a change in the governing law or of the forum for administration may be made by the Trustees. As often as any such declaration is made, the Trustees may thereafter make such consequential modifications to the provisions of this Agreement as they, in their absolute discretion, consider necessary to assure that, so far as may be possible, such provisions shall be as valid and effective under the laws of such other jurisdiction as they are under the laws of the State of Delaware, except that the Trustees shall not, in so doing, render this Agreement void, voidable, illegal or revocable.

(c) This Agreement shall be irrevocable.

(d) Upon giving notice of resignation, the Trustee shall deliver a statement of its activities to the date of such notice for which it has not reported to the Beneficiaries of the trust referred to herein as the Annuitant (the "Beneficiaries"). A Beneficiary shall have ninety (90) days from receipt of such notice to file with Trustee any objections to its actions as Trustee. If no such objections are filed, Trustee shall be without any further liability or responsibility to any past, present, or future beneficiaries except for acts of gross negligence or willful wrongdoing.

(e) Upon the resignation of any Trustee, the Beneficiaries who are then sui juris shall have the power to release the former Trustee from all liability to every past or present beneficiary with respect to the administration of the trust during the period that the former Trustee acted. I direct that such release shall be binding on all present and future parties in interest without the necessity of a court accounting.

(f) In the event that a court accounting of the administration of any trust hereunder ever becomes necessary, I request that the Court dispense, to the maximum extent permitted by law (whether under the doctrine of virtual representation or otherwise), with the necessity of the appointment of any guardian or trustee ad litem.

(g) The Trustees may purchase assets from or sell assets to estates or other trusts, notwithstanding that one or more of the Trustees are fiduciaries of or beneficially interested in said estates or trusts; provided, however, that if one or more of the Trustees has no such interest, then as to all such matters only the disinterested Trustee(s) shall be qualified to participate on behalf of the trust hereunder.

(h) Any Trustee who is interested, in his or her personal capacity, in any firm or corporation in which the trust hereunder may have an interest, may deal freely with said firm or corporation in his or her individual capacity, notwithstanding that there may be a conflict with his or her fiduciary capacity hereunder.

(i) A person from time to time qualified as Trustee hereunder shall not be disqualified from purchasing property of the trust hereunder provided (1) said purchaser shall not participate as Trustee in the decisions of the Trustees as to the price, conditions and terms of the sale, all of which decisions shall be made by the other Trustee(s); and (2) in fixing said price, conditions and terms said other Trustee(s) shall in all respects treat said purchaser in the same manner as though he or she were a third party, not qualified as Trustee.

(j) Any Trustee hereunder may renounce any fiduciary power granted to said Trustee under this Agreement or by law.

(k) The Settlor shall have the power, by an instrument signed and acknowledged by him and delivered to the Trustees hereunder, to reacquire any property held in trust by substituting other property of equivalent value. Such power shall be exercisable, in the sole discretion of the Settlor, at any time or from time to time and in nonfiduciary capacity, without the approval or consent of the Trustees or of any other person acting in a fiduciary or nonfiduciary capacity. It is the intention of the Settlor that such power shall constitute a power described in Section 675 of the Code. The Settlor may surrender such power at any time, with respect to the trust created hereunder, by an instrument signed and acknowledged by him and delivered to the Trustees of the trust, provided that, thereafter, the Trustees shall designate so many additional non-related, non-subordinate Trustees such that at no time are more than half the Trustees related to or subordinate to the wishes of the Settlor within the meaning of Sections 672(c) of the Code.

(l) The provisions of this Agreement shall be construed, and the trust created under Article 1 of this Agreement for the Annuitant's benefit shall be administered, solely in accordance with the Settlor's intent to create a "qualified unitrust interest" and in a manner consistent with Section 2702(b)(2) of the Code and related regulations (and with any successor statute or regulations and any revenue rulings, revenue procedures, notices or other administrative pronouncements that may be issued thereunder by the Internal Revenue Service). Should the provisions of this Agreement be inconsistent, or in conflict, with said statute or regulations, revenue rulings, revenue procedures, notices or other administrative pronouncements, in effect or issued from time to time, said statute or regulations, revenue rulings, revenue procedures, notices or other administrative pronouncements shall supersede the provisions set forth herein. If said statute or regulations, revenue rulings, revenue procedures, notices or other administrative pronouncements, at any time require that a trust intended to create a "qualified unitrust interest" contain provisions not expressly set forth herein, such provisions shall be incorporated into this Agreement by reference and shall be deemed to be a part of this Agreement to the same extent as though originally set forth herein. Furthermore, the Trustees are authorized and empowered, from time to time, to amend this Agreement solely in order to comply with the requirements of said statute or regulations, revenue rulings, revenue procedures, notices or other administrative pronouncements.

(m) Any interest herein of a beneficiary hereunder may be assigned or otherwise transferred in any way and in any manner, it being the Settlor's intent to confer upon the beneficiary a power to transfer such interest.

(n) The Settlor shall be personally liable on any indebtness secured by any of the property held hereunder, and the Trustees shall be subrogated to the rights of any creditor against the Settlor in the event and to the extent that said indebtness is satisfied with trust property.

(o) Wherever reference is made in this agreement to "the Code" it shall mean the Internal Revenue Code of 1986, as amended, and, if to any specific provision, it shall include any comparable provision of any subsequently enacted revenue law of the United States in effect from time to time.

(p) Wherever the context permits, the word "Trustees" shall be deemed to include "their survivor or survivors, successor or successors."

(q) Every Trustee hereunder, original and substitute, shall be chargeable only with said Trustee's own respective receipts or acts, and shall not be liable for any loss or damage occurring hereunder without said Trustee's wilful default or deliberate wrongdoing, unless such loss or damage be occasioned by a violation of an express provision of this Agreement, and shall not be liable to any person beneficially interested hereunder for any loss or depreciation which may arise from any investment retained or made in accordance with the provisions of this Agreement or which may be occasioned by the exercise of any discretion authorized herein, whether such investment be continued or made in accordance with or in disregard of recommendations obtained as above provided. The Settlor agrees to indemnify and hold harmless the Trustees, from and against any and all losses, claims, charges, liabilities, lawsuits or other expenses (including reasonable professional fees and disbursements to counsel) which may be asserted against the Trustees by reason of exercising any of the powers and directions hereunder except where any such loss, claim, charge, liability, lawsuit, or other expense may have been incurred by reason of the gross negligence or willful misconduct of the Trustees.

(r) The Trustee is hereby authorized and directed to execute and file a certificate of trust with the Delaware Secretary of State in the form attached hereto as Schedule B.

(s) The Trustee hereby accepts the trust herein and agrees to carry out the provisions hereof and faithfully to perform and discharge all of its duties as Trustee.

**IN WITNESS WHEREOF,** the undersigned have hereunto set their hands and seals the day and year first above written

_____ (L.S.)
Steven Menzies, Settlor

CHRISTIANA BANK AND TRUST COMPANY, Trustee


By: _____ (L.S.)
Name:
Title:

STATE OF California )
: ss.:
COUNTY OF San Francisco )

  On this 26th day of August, 2003, before me the undersigned, personally appeared STEVEN MENZIES, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

                  _____
                    Notary Public

[Notary seal: QUINTELLA M. GRIFFIN, Comm. #1376203, NOTARY PUBLIC - CALIFORNIA, City & County of San Francisco, My Comm. Expires Sept. 23, 2006]

STATE OF DELAWARE )
: SS.:
COUNTY OF )

  On this _____ day of _____, 2003, before me personally came _____ to me known, who, being by me duly sworn, did depose and say that he/she resides at _____; that he/she is the _____ of CHRISTIANA BANK AND TRUST COMPANY, the corporation described in and which executed the foregoing instrument; that he/she knows the seal of said corporation; that the seal affixed to said instrument is such corporate seal; that it was so affixed by authority of the board of directors of said corporation and, that he/she signed his/her name thereto by like authority, and such individual made such appearance before the undersigned in _____

_Insert state and city or other subdivision_

                  _____
                    Notary Public

9

## SCHEDULE A

Annexed to Trust Agreement dated
as of the _____ day of _____, 2003, between
STEVEN MENZIES, as Settlor, and
CHRISTIANA BANK AND TRUST COMPANY, as Trustee

Cash $_____

## SCHEDULE B

## CERTIFICATE OF TRUST
## OF
## THE MENZIES GRRT

This Certificate of Trust of THE MENZIES GRRT (the "Trust"), dated as of _____, 2003, is being duly executed and filed by Christiana Bank & Trust Company, a Delaware banking corporation, as trustee (the "Trustee"), to form a statutory trust under the Delaware Statutory Trust Act (12 Del.C. s.3801 et seq.).

1. Name: The name of the statutory trust formed hereby is THE MENZIES GRRT.

2. Delaware Trustee: The name and business address of the trustee of the Trust in the state of Delaware is Christiana Bank & Trust Company, Greenville Center, 3801 Kennett Pike, Greenville, DE 19807, Attention: Joseph Freney, Personal Trust Administration.

3. Effective Date: This Certificate of Trust shall be effective [at _____ _.m. on _____, 2003] or [upon filing of this Certificate with the Delaware Secretary of State].

**IN WITNESS WHEREOF,** the undersigned, being the sole trustee of the Trust, has executed this Certificate of Trust as of the date first above written.

CHRISTIANA BANK & TRUST COMPANY, not in its individual capacity but solely as Trustee of the Trust.

By: _____
Name:
Title:

11

SF1 28153793.1